**UNITED STATES of America**

v.

**Mohammed NASERKHAKI.**

**Crim. No. 89–00108–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 31, 1989.

Christine Wright, Asst. U.S. Atty., Alexandria, Va., for U.S.

Marvin D. Miller, Alexandria, Va., for Mohammed Naserkhaki.

## ORDER

ELLIS, District Judge.

This matter came before the Court on numerous pretrial motions, including a motion to dismiss the indictment on the ground of prejudicial pre-indictment delay. Following oral argument, the Court ruled on the other motions, but held the motion to dismiss in abeyance pending receipt of further briefs. *See* Orders dated May 5, 1989 and May 24, 1989. On the basis of all the briefs and arguments submitted, the Court concludes that the motion to dismiss the indictment on the ground of pre-indictment delay should be, and hereby is, DENIED.

A five count indictment charges defendant with various immigration law violations and obstruction of justice. Specifically, defendant, an Iranian national, is charged with the following:

*Count One:* Knowingly, wilfully and unlawfully making, using and submitting a false application and supporting documents to the Immigration and Naturalization Service (INS) on or about October 7, 1986 for the purpose of obtaining a Refugee Travel Document (RTD), all in violation of 18 U.S.C. § 1001.

*Count Two:* Knowingly, wilfully and unlawfully using a fraudulently procured RTD to enter the United States on or about June 2, 1987, in violation of 18 U.S.C. § 1546.

*Count Three:* Knowingly, wilfully and unlawfully using a fraudulently procured RTD to enter the United States on or about September 18, 1987, in violation of 18 U.S.C. § 1546.

*Count Four:* Knowingly, wilfully and unlawfully using a fraudulently procured RTD to enter the United States on or about May 8, 1988, in violation of 18 U.S.C. § 1546.

*Count Five:* Knowingly, wilfully and corruptly influencing, impeding and obstructing the due and proper administration of justice by making false and misleading statements to the INS from October 1, 1986 to March 1989 for the purpose of obtaining a RTD and status as a Permanent Resident, in violation of 18 U.S.C. § 1505.

In essence, the government alleges that defendant filed an RTD application in New York on October 1, 1986. Defendant filed a second application on October 7, 1986, this time in Arlington, Virginia. According to the government, this second application included false prior addresses, a false statement that he had not previously applied for an RTD, and false reasons for travel. The government also contends that the October 7 application falsely claimed that defendant's last entry into the United States had occurred in Los Angeles when, in fact, it had occurred in Canada at a later date. In any event, the INS issued defendant an RTD based on the October 7 application. Thereafter, defendant allegedly used this fraudulently obtained RTD to enter the United States in June and September 1987 and again in May 1988.

Federal Bureau of Investigation (FBI) investigation of this case commenced circa October 1986. The indictment was returned in March 1989, well within the limitations periods for the violations charged. *See* 18 U.S.C. § 3282 (five year limitations period for non capital offenses). But defendant claims that "the information that is central to the prosecution of this case was available to the government by late February or early March 1987." From this assertion, defendant argues that approximately twenty-four months elapsed be-

tween obtaining the so-called "information that is central to the prosecution" and the indictment and that this constitutes impermissible pre-indictment delay. This argument is unpersuasive. Defendant inaccurately lumps together all the offenses when asserting that a 24 month pre-indictment delay occurred. Although Counts Two, Three and Four all rely on the use of the allegedly unlawfully obtained RTD, the offenses charged in those counts did not occur until after the time the defendant claims the FBI obtained the information central to this prosecution. In February and March 1987, therefore, the FBI could not have had all the information as to those counts. At most, only information relating to the Count One and some portion of Count Five was available to the FBI at that time. Manifestly, therefore, Counts Two, Three and Four cannot be the subject of defendant's two year delay claim. Even assuming some delay as to all counts, however, defendant's motion still falls far short of the standard warranting dismissal.

■ Pre-indictment delay, under certain circumstances, amounts to a deprivation of due process. *See United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The Fourth Circuit has established the following two-pronged test to determine whether a specific pre-indictment delay violates due process:

First, a court must assess whether the defendant has suffered actual prejudice, and the burden of proving such prejudice is clearly on the defendant. If the threshold requirement of actual prejudice is met, the court must then consider the government's reasons for the delay, balancing the prejudice to the defendant with the government's justification for delay.... The basic inquiry then becomes whether the government's action in prosecuting after substantial delay violates "fundamental conceptions of justice" or "the community's sense of fair play and decency." *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977).

*United States v. Automated Medical Laboratories, Inc.,* 770 F.2d 399, 403–04 (4th Cir.1985) (45 month pre-indictment delay in a prosecution for making false statements to Food and Drug Administration did not violate due process because defendant did not demonstrate actual, substantial prejudice). In applying this test, courts must bear in mind that to prevail on a due process challenge, a defendant has a heavy burden. *See United States v. Marler,* 756 F.2d 206, 213 (1st Cir.1985); *United States v. Elsbery,* 602 F.2d 1054, 1059 (2d Cir.), *cert. denied,* 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979); *United States v. Sample,* 565 F.Supp. 1166, 1174–75 (E.D.Va. 1983); *Stoner v. Graddick,* 751 F.2d 1535, 1544 (11th Cir.1985) (per curiam). Defendant has not carried his burden of showing actual prejudice resulting from any impermissible delay. Nor does it appear that whatever delay may have occurred was intentional or designed for the purpose of gaining a tactical advantage or depriving defendant of a defense.

### A. *Prejudice*

At the initial hearing, defendant made only broad and vague assertions of prejudice due to loss of allegedly exculpatory witnesses. No specific witnesses were identified and no detailed summary of their likely testimony was presented. As a matter of grace, the Court gave defendant a further opportunity to make a particularized showing of prejudice. Defendant was given leave to file a further pleading that would state "with particularity the reasons why delay in seeking the indictment has substantially prejudiced the defense." Order dated May 5, 1989. Settled law requires defendant seeking relief for prejudicial pre-indictment delay to state with particularity how an absent witness would have aided his case. Importantly, defendant must further show how the loss of that witness through pre-indictment delay causes definite, not speculative, prejudice. *See, e.g., United States v. Jenkins,* 701 F.2d 850, 855 (10th Cir.1983); *United States v. Buttorff,* 572 F.2d 619 (8th Cir.), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978); *United States v. Pal-*

lan, 571 F.2d 497, 500–01 (9th Cir.), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978).

Defendant's second effort still falls short of meeting this standard. While defendant's response adds some information, it fails to demonstrate the requisite actual prejudice attributable to delay. In his response, defendant now identifies, by last name only, six witnesses, five who have ostensibly left the United States and one who was allegedly murdered. No addresses are given. This hampers, if not precludes, verification and thus somewhat lessens the credibility of defendant's claims. In some instances, defendant apparently does not even know when during a year the witness left the United States or otherwise became unavailable.

But far more significant than this lack of detail is the absence of any convincing showing that the six individuals named as now unavailable are the only witnesses who could provide the evidence described. Indeed, the contrary seems more plausible. For example, a Mr. Barzagani, a "family friend" whose present whereabouts and date of unavailability are unknown to defendant, is said to be a person who could support defendant's position by testifying that at the relevant times defendant's father was indeed ill in Paris and that defendant had been summoned to Paris to aid his father. Similar testimony is said to have once been available from a Mr. Habibi, about whom all the Court is told is that he was "murdered in the summer of 1988 by Khoumeini agents because he was an Iranian dissident." Even accepting all this, no claim is made that Messrs. Barzagani and Habibi are the only persons who can give evidence of these facts. It seems equally plausible that other family members and friends would have knowledge of them.

The same may be said with respect to the other witnesses defendant claims are now unavailable. Thus, defendant names his uncle, a Mr. Torabi, as one who could substantiate defendant's stated reasons for travel to Canada. The uncle, it seems, was ill in Canada and summoned defendant to his side. The only information given con-

cerning this witness's unavailability is that he returned to Iran in late 1987. There is no reason to suppose that this person is the only person who could give this testimony. Nor is it clear that defendant could not have made arrangements to have this witness present for trial. Next, defendant claims that a Mr. Kiamanesh is a friend with whom he lived in Northern Virginia who would be able to give testimony rebutting the government's allegations of false addresses. All we are told about this putative witness is his last name, an address where he once lived with defendant, and that he left the United States sometime in the summer of 1988. No specific date of departure or current address is given. Mr. Morzedi and Mrs. Torbati fall in this same category. Mr. Morzedi was supposedly a student in New York in 1986 who left this country sometime during 1988. Mrs. Torbati is said by defendant to have departed this country in 1987 and to have shared an Alexandria, Virginia residence with defendant at some time during the relevant period. Again, no specific date of departure or current address is given.

Even assuming the current unavailability of Messrs. Kiamanesh, Barzagani, Morzedi and Mrs. Torbati and the nature of their putative testimony, there is no persuasive reason to believe that their knowledge is unique. Indeed, the record of the probable cause hearing reflects the contrary. Among the defense witnesses who testified there were two persons who testified they had known defendant five or six years. One of these witnesses, Hosseim Panah, stated that during this period, which encompassed the time concerned in the indictment, he and defendant saw each other at least twice a week and for some period of time they had resided together in Springfield, Virginia. The second witness, Nassar Chobin, stated that he and defendant visited each other at least once a week during essentially the same five year period and that, to his knowledge, defendant had resided in Springfield for three to four years. In addition to these witnesses, it appears that defendant has a financially supportive brother who resides in California as well as a friend who is a Duke University professor, both of whom are apparently willing to testify. It appears, therefore, that defendant is not lacking in available witnesses who have known him for years and who, so far as the record shows, should be able to give testimony concerning defendant's residences and actions during all relevant times. Indeed, defendant has never represented that these witnesses are unique in their knowledge of defendant's residences and actions.

In sum, defendant has failed to make a convincing showing of actual prejudice. At most, he has shown the possibility of prejudice due to the passage of time. His constitutionally sufficient protection against this prejudice are the statutes of limitations. *See Toussie v. United States*, 397 U.S. 112, 114, 90 S.Ct. 858, 859, 25 L.Ed.2d 156 (1970).

### B. *Delay*

■ Even assuming some actual prejudice, however, defendant's motion still fails for there is no basis to conclude that any delay on the government's part was intentional or reckless. No due process violation exists unless the government's delay is intentional or reckless. In the words of the Fourth Circuit,

> [d]ue process is not violated simply because the defendant is prosecuted after substantial investigative delay.... This right is violated, however, if the delay actually prejudices the conduct of the defense and the government has "intentionally delayed to gain some tactical advantage" over the defendant or to harass him.

*United States v. Stinson*, 594 F.2d 982, 984 (4th Cir.1979).[1]

---

**1.** *See also United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971); *United States v. Lovasco*, 431 U.S. 783, 795 n. 17, 97 S.Ct. 2044, 2051 n. 17, 52 L.Ed.2d 752 (1977); *United States v. Dennis*, 625 F.2d 782, 794 (8th Cir.

1980) ("The ultimate question in determining whether a deliberate or reckless delay is 'tactical' is whether it is engineered to impair the defendant's ability to mount an effective defense by causing him to lose evidence or witnesses.").

It is only when the government is shown to have an "ulterior motive for the delay" that a due process violation exists. *United States v. Francisco*, 575 F.2d 815, 817 (10th Cir.1978).[2]

■ The courts are divided regarding who bears the burden of proof of showing the government's reasons for pre-indictment delay. Some courts place the burden on the defendant, while others require the government to show a legitimate reason for delay once the defendant shows prejudicial delay. *Compare United States v. King*, 593 F.2d 269, 272 (7th Cir.1979) (court should balance actual prejudice to defendant with reasons given by government for any delay in prosecution) *with United States v. Durnin*, 632 F.2d 1297, 1299 (5th Cir.1980) (burden rests on defendant to show prejudicial motive on part of the government). Yet a third line of authority holds that once the defendant has made a *prima facie* showing that delay caused actual prejudice and that the delay was reckless or intentional, the government must then come forward with evidence rebutting these matters. But the burden of going forward with a rebuttal does not shift the ultimate burden of proof or persuasion, which remains on defendant. *See United States v. Comosona*, 614 F.2d 695, 696–97 (10th Cir.1980). The Court concludes that this third approach is the most sensible, given that the government's reasons for any delay are typically within its sole knowledge. But, in the case at bar, the defendant has failed to make even a *prima facie* showing that any delay was deliberate or reckless on the government's part. There is not a scintilla of evidence that any pre-indictment delay here was deliberate, reckless or orchestrated by the government to gain a tactical advantage over defendant. There is no showing whatever that the government had any ulterior motive for any delay.

It appears that this prosecution grew out of a 1983 investigation that led to a sealed indictment in the District of Vermont. The subject of that indictment is not directly related to the instant case. The defendant was not indicted in Vermont, but was apparently somehow involved in that earlier investigation. Defendant's October New York RTD was turned over to the FBI for further investigation. It appears, however, that it was not until March 1987 that the FBI learned that the second application filed by the defendant in Virginia had led to the INS' issuance of an RTD to defendant. From March through August, 1987, the FBI investigated various entries on the two RTD applications, including multiple residences listed by defendant. During 1988, the agent in charge met with prosecutors then located in the District of Vermont. In November 1988, the Department of Justice prosecutor involved in the case prepared a status report showing that some investigation remained to be completed. The matter was thereafter submitted to the United States Attorney in Alexandria, Virginia on February 6, 1989. This background may suggest that the government's investigation might have been completed on a more expeditious basis. Even so, the amount of delay, if any, seems quite modest.

In any event, there is nothing in this investigation scenario that permits or invites the inference that any delay was deliberately orchestrated or the result of reckless conduct on the part of the government. This is simply not an instance of prosecutorial or investigative delay that violates fundamental conceptions of justice or the community's sense of fair play. *See United States v. Automated Medical Laboratories, Inc.*, 770 F.2d 399, 403–04 (4th

---

**2.** This stringent test serves to define prosecutorial delay which rises to the level of a constitutional due process violation. Unintentional delay resulting from ordinary lack of diligence and the like may well cause prejudice, but does not rise to the level of a deprivation of due process. The effects of delay that is neither intentional nor reckless are ameliorated by the statute of limitations, which "is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time." *Toussie v. United States*, 397 U.S. 112, 114, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970); *cf. United States v. Marion*, 404 U.S. 307, 322–23, 92 S.Ct. 455, 464–65, 30 L.Ed.2d 468 (1971); *Stoner v. Graddick*, 751 F.2d 1535, 1541, 1544 (11th Cir. 1985) (per curiam).

Cir.1985). At most, defendant is affected by the normal vicissitudes of the passage of time; he is not the victim of reckless or intentional government conduct. Of course, the mere passage of time may cause blurred memories and a loss of witnesses or documents. But the remedy in this event, so far as one exists, is the statute of limitations, not the Fifth Amendment.