UNITED STATES of America,
Plaintiff–Appellee,

v.

John Charles DELARIO,
Defendant–Appellant.

No. 89–1956
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 7, 1990.

Stephen M. Orr, Austin, Tex., for defendant-appellant.

LeRoy M. Jahn, Philip Police, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before KING, GARWOOD and DUHÉ, Circuit Judges.

PER CURIAM:

Appellant John Charles Delario challenges his conviction for distribution of lysergic acid diethylamide (LSD), possession with intent to distribute LSD, and conspiracy to possess and distribute LSD. Delario complains that the search of his automobile was unconstitutional, the pre-indictment delay denied him due process, and the jury instruction was improper. Finding no error, we affirm.

*Facts and Proceedings Below*

Undercover agents of the Austin Police Department and the Drug Enforcement Agency (DEA) contacted Bob Berry to negotiate the purchase of LSD. Berry contacted Delario, his supplier, and informed him of the quantity he would need to complete the deal with the undercover agents. Berry delivered the LSD to the agents and was arrested.

Pursuant to a plea bargain, Berry agreed to assist the agents in apprehending Delario. Berry enlisted the help of Heather Carney, his girlfriend, who had recently moved in with Delario. Carney contacted Agent Pena of the DEA and predicted a very detailed series of events which would lead up to Delario's purchase of LSD from his supplier, "Comic Book John."

The officers initiated surveillance of Delario's residence around 10:00 a.m. Just as Carney had predicted, a pink Cadillac left the apartment that morning en route to the Federal Correctional Institute (FCI) where Carney was going to visit Berry. She telephoned the officers from a convenience store and informed them that Delario would purchase the LSD from "Comic Book John," wrap it in newspaper and stash it in the toolbox compartment of his truck, and then pick her up at the FCI.[1]

Meanwhile, other officers tailed Delario as he departed his home in his truck around 1:00 p.m. Delario took a series of turns which the agents described as a "heat run" designed to throw off any "tail." Spotting the truck a short time later, the officers resumed surveillance and followed Delario to RJ's Bar, a place located in the general vicinity of "Comic Book John's" residence. Delario entered the bar, and another man drove off in Delario's truck. An officer followed Delario into the bar and observed him sitting at a table with a newspaper. The pickup truck returned with Carney and the other man, and Delario left the bar. An officer, looking through binoculars, observed Delario put what appeared to be a newspaper in the

---

1. Carney testified at trial that she had overheard Delario and Comic Book John discussing the details of the transaction that morning, and that she had been present during prior transactions.

toolbox of the truck. All three climbed into the truck and drove off.

The officers followed the truck into Bastrop. After a marked police car pulled in behind Delario, the officers noted that a paper object was thrown from the passenger compartment of the truck. Suspecting Delario was trying to dispose of the LSD, the officers signalled Delario to pull over. They searched the truck without his consent and discovered a newspaper concealing six plastic-wrapped sheets of paper containing 5000 unit dosages of LSD.

Delario was initially charged with distribution of LSD and possession with intent to distribute LSD in violation of 21 U.S.C. § 841(a)(1). The district court denied Delario's motion to suppress the LSD found in the search of the truck. A mistrial was declared when the jury could not arrive at a verdict. A superseding indictment charged Delario with distribution of LSD, possession with intent to distribute LSD, and conspiracy to possess and distribute LSD. The jury returned guilty verdicts on all three counts. This appeal followed.

### The Search and Seizure

The appellant contends that the warrantless search of his truck was per se unreasonable and that no exigent circumstances existed to trigger an exception to the warrant requirement. He further contends that the officers had no reasonable basis upon which to justify the stop. We disagree.

■ A warrantless search of an automobile is permissible where the police have probable cause to believe that the vehicle contains contraband. *United States v. Prati*, 861 F.2d 82, 85 (5th Cir.1988). The determination of whether probable cause exists involves "a practical, common-sense decision whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Muniz–Melchor*, 894 F.2d 1430, 1438 (5th Cir.1990) (citations omitted), cert. den., —— U.S. ——, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). The credibility of the informant supplying the information is evaluated, as well as the practical knowl-

edge and experience of the officers involved. *United States v. Rodriguez*, 835 F.2d 1090 (5th Cir.1988); *Muniz–Melchor*, 894 F.2d at 1438.

■ The appellant argues that the police could not justify the stop and search on the basis of Carney's tip because she was a "first time informant of unproven reliability." However, prior performance is not the only indicia of reliability. "[T]he credibility of an informant's tip is strengthened if made in great detail, thus evincing a strong basis for the informant's knowledge." *United States v. Reyes*, 792 F.2d 536 (5th Cir.1986) (citations omitted.) Carney predicted in great detail the events which would transpire, and each was corroborated by police observation. Additionally, Berry and other Austin LSD sellers had identified Delario as their supplier.

To the experienced law enforcement officers, Delario's activities were also suspicious. He used a "heat run" pattern when he left his residence, a common evasive technique. RJ's Bar, his destination that afternoon, was in close proximity to "Comic Book John's" residence. These observations, and those which corroborated Carney's information, combined to give the officers probable cause to believe that LSD would be found in the truck.

■ Appellant argues that there were no exigent circumstances which would excuse the officers' failure to secure a warrant. This court has recognized that the mobility of an automobile creates sufficient exigency to justify a search based on probable cause. *United States v. Espinosa–Seanez*, 862 F.2d 526 (5th Cir.1988) (citations omitted). Additionally, because LSD is dispensed on perforated sheets of paper, there is great danger that the evidence will be destroyed. This was the concern which prompted the officers to stop Delario when they saw the paper fly out the window. We find no error in the district courts denial of the motion to suppress.

### Pre and Post–Indictment Delays

The appellant contends that the pre-indictment delay of over a year resulted in

the loss of evidence and the unavailability of witnesses and constitutes a denial of due process. We find no merit in this argument.

Because there is no sixth amendment right to a speedy indictment, the appellant must prove a denial of fifth amendment due process. *United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982). A showing of mere delay is not sufficient. The appellant must show that "the government intentionally delayed the indictment to gain a tactical advantage, and that the delay caused [him] actual and substantial prejudice." *United States v. Carlock,* 806 F.2d 535 (5th Cir. 1986) (citations omitted).

Delario has failed to demonstrate any actual prejudice. As the government notes, the loss of the newspaper before trial hindered the *government's* efforts rather than Delario's. Even though the newspaper was lost, the fingerprints taken from it were retained for use by either party at trial. We find no actual prejudice from the pre-indictment delay.

Likewise, we find no merit in Delario's objection to the post-indictment delay of eight and a half months. Under the balancing test of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) [2] this delay is not long enough to be "presumptively prejudicial." See, e.g., *United States v. Metz,* 608 F.2d 147, 152 (5th Cir.1979) (where the court found a nine month delay was not prejudicial); *United States v. Maizumi,* 526 F.2d 848, 851 (5th Cir.1976) (where the court concluded ten months was not a prejudicial delay.) We find no error in the district court's denial of this motion.

### The Jury Instruction

The appellant objects to the district court's jury charge that "[i]n considering the quantity of the mixture or substance . . . you are to consider the weight of any

paper that contained a detectable amount of LSD." He asserts that this instruction constitutes an implied finding by the court that the substance weighed over ten grams. This contention also lacks merit.

This court has held that "quantity is not an element of the crimes proscribed by §§ 841(a)(1) and 846 and need only be proved when the government seeks an enhanced penalty." *United States v. Morgan,* 835 F.2d 79, 81 (5th Cir.1987). The instruction was not necessary because enhancement is a concern of the sentencing judge rather than the jury. The instruction did not address an element of the offense and thus did not deprive the appellant of the presumption of innocence.

### Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

**2.** Under this test, the court balances (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial rights, (4) the prejudice to the defendant. However, unless the delay is long enough to be

"presumptively prejudicial," the claim may be rejected without consideration of the other factors. *United States v. Harvey,* 897 F.2d 1300, 1302 (5th Cir.1990).