**UNITED STATES of America**

v.

**Bernard G. JONES.**

**Crim. A. No. 91–00200.**

United States District Court, E.D. Pennsylvania.

March 16, 1992.

Joseph G. Poluka, Emily McKillip, Asst. U.S. Attys., Philadelphia, Pa., for U.S.

Robert O'Shea, Philadelphia, Pa., Jay Irwin Block, Owings Mills, Md., for Bernard G. Jones.

## MEMORANDUM

KATZ, District Judge.

Following his conviction for distribution of a controlled substance, the defendant filed a *pro se* motion for appointment of substitute counsel. In that motion, the defendant alleged that he had received ineffective assistance of counsel at trial. The request for appointment of substitute counsel was granted. The court has held an evidentiary hearing.

To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. The standard is that "counsel's representation fell below an objective level of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the re-

sult of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

■ Defendant's claim that his counsel "waive[d] his defense by presenting nothing" is unsupported by the record. Before trial, counsel opposed the government's motion for admission of the tape recordings of the defendant's conversations regarding the drug deal, and filed motions to suppress the defendant's incriminating post-arrest statements and to preclude the government from introducing evidence of the defendant's prior drug dealings. At trial, counsel presented a defense based on two principal arguments: (1) that Paul Thomas, a confidential informant for the government and the only government witness present at the actual distribution of the drugs, was unreliable and unworthy of belief; and (2) that the defendant is a person of good character who would not have committed a crime such as the one of which he was accused. Trial counsel not only cross-examined Thomas about his criminal record and the payments that he received from the government in the present case and another investigation, he confronted Thomas with a letter written from prison in which Thomas (according to defense counsel's argument) offered to assist the defendant in manipulating the judicial system. After the government rested, trial counsel called to the stand the defendant's mother, who testified to the defendant's good character. Trial counsel represented that he had subpoenaed an additional witness, the ex-wife of the government informant. When that witness did not appear, trial counsel was permitted to read to the jury a stipulation that the witness would have testified that Thomas was an untruthful person. Trial counsel made a vigorous closing argument on the defendant's behalf. During the entire course of the trial, counsel made repeated objections, many of which were sustained, and made motions for a mistrial. The defendant's assertion that his trial counsel presented no defense is without foundation.

■ Defendant's claim of ineffective counsel because trial counsel failed to call a Barry Dunton [sic] (actually Barry Dutton) as a witness is also without foundation. The decision not to call a witness is not *per se* ineffective assistance. *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir. 1987) (within the wide range of reasonable professional representation to decide not to call witness), *cert. denied,* 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987). Defense counsel has no obligation to call, or even to interview, a witness whose testimony would not have exculpated the defendant or would have been inconsistent with the theory of defense. *United States v. Porter,* 924 F.2d 395, 397 (1st Cir.1991) (within scope of informed professional judgment to not call witness who could have incriminated defendant); *Lewis v. Mazurkiewicz,* 915 F.2d 106, 112–14 (3d Cir.1990) (counsel simply required to exercise reasonable professional judgment, not to interview every possible witness). *See also, Reese v. Fulcomer,* 946 F.2d 247, 257 (3rd Cir.1991) (not deficient to decide not to call alibi witness when witness' testimony could have been damaging), *petition for cert. filed,* (Jan. 13, 1992) (No. 91–7081).

■ At best, Dutton's testimony would have provided no significant support for defendant's case. Before trial, Special Agent Jeffrey Tiburzi of the Drug Enforcement Administration interviewed Dutton. In that interview, Dutton stated that he went into the men's room of the Pizza Hut with the defendant and the government informant, Thomas. Dutton stated that he used the men's room facilities, washed his hands, but that he did not see or hear what transpired between the defendant and Thomas. He stated that the defendant did not tell him before they went into the men's room what the defendant expected to happen and that the defendant did not tell him later what had happened.

Dutton's testimony would have strengthened the government's case, or lent little support to the defendant. If Dutton had attempted to exculpate the defendant by telling an entirely different story from that in his interview, then the government

would have impeached Dutton with his prior or inconsistent statements and argued Dutton's obvious self-interest in denying that he had been present at, if not an actual participant in, a drug sale. If Dutton testified consistently with the claim set forth in the defendant's motion for appointment of substitute counsel, he would have incriminated the defendant. If Dutton testified consistently with his interview, he would have indicated that he knew nothing of what happened. Dutton might have invoked his Fifth Amendment right not to incriminate himself. He even might have corroborated the testimony of the government's witnesses. None of these possible testimonies have a significant likelihood of changing the result of conviction. Any benefit to the defendant from Dutton's testimony would be speculative, far from the "reasonable probability."

■ Defendant's claim of ineffective counsel because trial counsel erred by failing to call the defendant himself to the stand is without merit. The defendant states that he would have testified that he took $1800 from the government's informant and gave him two grams of cocaine powder. Defendant's Motion ¶ 6. The defendant's claim is that he would have been acquitted of drug trafficking if the jury had been permitted to hear him testify that he took $1800 from Thomas, gave Thomas two grams of cocaine as a "sample," and then reneged on the deal by withholding the rest of the drugs. However, such testimony by itself would have been a confession to a criminal offense that could have supported the defendant's conviction. That he allegedly would have testified to distributing only two grams, rather than two ounces, would not have prevented his conviction. Trial counsel's alleged refusal to present such testimony is not a breach of the standards of reasonable representation.

■ The defendant further claims that trial counsel rendered ineffective assistance because he did not present an expert to testify regarding the drugs seized. Trial counsel's decision not to challenge the government's analysis of the drugs at trial is not an unreasonable strategy. At trial, the defense took the position that the defendant had not distributed the drugs contained in Government's Exhibit 1 to Thomas. The defense's trial theory was that Thomas had fabricated the incident in return for payments as an informant and assistance in getting his state prison sentence reduced. The defense's stipulation to the nature and weight of Government Exhibit 1 (for trial purposes only) was entirely consistent with that theory. It was not unreasonable for trial counsel to conclude, as he did, that challenging the analysis of the drugs would weaken the defense case. In effect, the defendant would have been arguing "I didn't give Thomas any drugs, and besides, what I gave him was cocaine, not cocaine base." It is reasonable for defense counsel to have allegedly rejected such a inconsistent divided strategy in favor of a unified position.

Moreover, by the express terms of the stipulation, the defendant retained the right to challenge the government's analysis of the drugs at the sentencing phase. The defendant has admitted in his motion for substitution of counsel that he distributed a controlled substance to Thomas (or at least that he would have so testified). The only issue that remains, then, is the punishment for that criminal act. The defendant's new counsel has retained an expert, who has retested the drugs.

■ The defendant claims that his trial counsel was ineffective because trial counsel did not raise a claim relating to preindictment delay. Counsel is not, however, required to raise arguments that are without merit. *United States v. Swinehart,* 617 F.2d 336, 341 (3d Cir.1980) (effective assistance does not demand that every possible motion be filed, but only those having a solid foundation). *See also, Acha v. United States,* 910 F.2d 28, 32 (1st Cir. 1990) (counsel under no obligation to raise meritless claims); *United States v. Caputo,* 808 F.2d 963, 967 (2d Cir.1987) (counsel's failure to make motion entirely reasonable when counsel probably realized that there is no legal basis to support motion). No valid claim that the defendant

was denied due process because of pre-indictment delay exists in this case.

▮ To make out a due process claim based on pre-indictment delay, a defendant must satisfy two requirements; first, he must show that the delay substantially prejudiced his defense, and second, he must show that the government intentionally delayed either to gain a tactical advantage or to harass the defendant. *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048-49, 52 L.Ed.2d 752 (1977) (proof of prejudice not sufficient, the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused; citing *United States v. Marion*, 404 U.S. 307, 324-25, 92 S.Ct. 455, 465-66, 30 L.Ed.2d 468 (1971)). The defendant committed his crime on March 1, 1990, and was indicted on May 16, 1991. The defendant cites no facts showing that he was prejudiced by the approximately fourteen months that passed between the crime and indictment, and no prejudice appears on the record. The physical evidence (the drugs and the tapes) was available and was presented at trial. No witnesses died or disappeared. Without a showing of actual prejudice, there is no valid due process claim cased on this lapse of time between the crime and the indictment. *Marion*, 404 U.S. at 325-26, 92 S.Ct. at 465-66. The defendant likewise presents no facts supporting his claim that the government intentionally delayed indictment to gain a tactical advantage. He does not explain what tactical advantage the government achieved.

▮ The defendant claims that trial counsel was ineffective in failing to present a defense of entrapment. Here again, defendant cannot expect counsel to raise arguments without merit. The defendant presents no facts showing that an entrapment defense existed. The evidence at trial shows no entrapment. The government introduced tape recordings of four telephone conversations between the defendant and the confidential informant and one tape of the actual sale. (Government's Exhibits T-1 through T-5 [tapes], TR-1 through TR-5 [transcripts]). In the conversations before the deal, in addition to discussing the informant's purchase of cocaine base from the defendant, the defendant talked about the going price for cocaine base and complained about shortages of supply. In the conversation on February 27, 1990, after a lengthy chat about mutual acquaintances (including their involvement in the drug trade), it was the defendant, not Thomas, who returned to the subject of their proposed transaction, saying that he would get "one a[or] two ... for 950" and replying "yeah" to the informant's question, "950 an ounce"? (Government's Exhibits T-2, TR-2). In their telephone conversation on the day of the sale, when the informant stated he he only had enough money to get "two" (*i.e.*, two ounces of cocaine base), the defendant immediately responded with the price that he would charge for each ounce. (Government's Exhibits T-3, TR-3). Most telling is the recorded conversation that took place on March 5, 1990, several days after the sale. In that conversation, without any prompting from the informant, the defendant volunteered the information that the defendant had two more ounces that he was willing to sell. (Government's Exhibit T-5, TR-5).

Furthermore, defense counsel's alleged decision not to claim entrapment was reasonable. Raising an entrapment defense would open the door to evidence about the defendant's prior drug trafficking activities. The government notified the defense that it intended to offer evidence that Thomas and the defendant had engaged in cocaine base trafficking on numerous prior occasions. The defendant's trial counsel moved to exclude that evidence, which did not come in at trial. Had the defense raised an entrapment issue, the defendant's history of drug trafficking would have been relevant to show his predisposition to sell crack cocaine. Because an entrapment claim would have been weak (if not completely untenable) and would have opened the door to extremely prejudicial evidence about the defendant's prior drug dealing, the decision not to claim entrapment cannot be characterized as unreasonable.