**UNITED STATES of America**

v.

**Robert COUCH, et al.**

**No. CR–1–93–033 (1 & 2).**

United States District Court,
S.D. Ohio, W.D.

May 24, 1993.

Henry Louis Sirkin, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, Richard Slukich, Covington, KY, for defendants.

Anthony William Nyktas, Dept. of Justice, Cincinnati, OH, Thomas E. Perez, Trial Atty., Crim. Section, Civil Rights Div., U.S. Dept. of Justice, Washington, DC, for U.S.

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS INDICTMENT

SPIEGEL, District Judge.

This matter is before the Court on the Defendant Michael Kraft's Motion to Dismiss the Indictment (doc. 7), the Government's Response (doc. 10), the Defendant Robert Couch's Motion to Dismiss (doc. 11), and the Government's Response (doc. 21). A hearing was held on this matter on May 18, 1993.

### BACKGROUND

In mid-August 1989, Larry Overbey led the police on a high speed chase which started in Northern Kentucky and ended across the river in Cincinnati, Ohio. The chase reached speeds in excess, it is claimed, of over 90 miles per hour, snaking its way through not only an interstate highway and a gas station, but also through residential neighborhoods and streets. Mr. Overbey was arrested at the conclusion of the chase and charged with various offenses including resisting arrest, attempted assault, and the felony of wanton endangerment. Mr. Overbey plead no contest to attempted assault, and was subsequently convicted. The resisting arrest charge was dismissed as part of a plea agreement.

According to the Government, the Defendants in this case, officers Couch and Kraft of the Covington, Kentucky Police Department, approached Mr. Overbey after he voluntarily pulled over. The Government maintains that Mr. Overbey was uninjured when he pulled over, and that the Defendants assaulted him with flashlights and other blunt instruments, causing lacerations to the victims head. The Defendants were indicted for the alleged assault on March 3, 1993, roughly three and one half years after the incident. It is undisputed, however, that the indictment was obtained within the five year statute of limitations.

The Defendants claim that the indictment should be dismissed due to the substantial prejudice to the Defendants' case caused by the Government's pre-indictment delay. Specifically, the Defendant Kraft claims that the delay was not only prejudicial, but also unjustified, and intentional, motivated by the Government's desire to capitalize on the Rodney King incident, and the Government's desire to obtain a tactical advantage from occurrences such as the stroke suffered by a material witness.

The Defendant Couch claims that the possible incompetence of the material witness, the destruction of taped police radio transmissions, and the loss of the automobile driven by Overbey, have caused the Defendants to suffer substantial prejudice to their case. The Defendants further contend that the two-prong test used by the Sixth Circuit in pre-indictment delay cases is not the "proper" test the Court should employ. Rather, according to the Defendants, the proper test should be the "totality-of-the-circumstances" test used by the United States Supreme Court in a variety of other cases.

Finally, the Defendant Couch claims that Count II of the indictment, accusing him with arresting Mr. Overbey without probable cause, should also be dismissed. The Defendant Couch claims that he did not arrest Overbey, and even if he did, the state court proceedings, including Mr. Overbey's plea of no contest and conviction on one count, "forecloses any issue of probable cause." For the following reasons we find that the indictment should not be dismissed, and consequently deny the Defendants' motions.

### DISCUSSION

#### Count I

##### a) The Totality of the Circumstances Test

■  The Defendants first argue that the Court should abandon the two-part test tra-

ditionally used in pre-indictment delay cases. *See United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *United States v. Brown*, 959 F.2d 63, 66 (6th Cir.1992) (per curium); *United States v. Lash*, 937 F.2d 1077, 1088 (6th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 397, 116 L.Ed.2d 347 (1991); *United States v. Atisha*, 804 F.2d 920, 928 (6th Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); *United States v. Brown*, 667 F.2d 566, 568 (6th Cir.1982). Instead, according to the Defendants, the Court should apply the "totality-of-the-circumstances" test adopted by the United States Supreme Court in a variety of other cases. We disagree.

First, the cases cited by the Defendants are neither on point, nor even analogous to this case. *See, e.g., Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Second, there is no indication that these cases stand for the proposition that the Supreme Court, as a general rule, wished to abandon all other tests concerning constitutional rights in favor of an across-the-board adoption of the totality-of-the-circumstances test. Similarly, we are aware of no other cases which support that proposition. Simply because the Supreme Court has found the totality-of-the-circumstances test to be the appropriate test in *some* cases, it does not necessarily follow

that it is the appropriate test in all cases, including this one.[1]

Furthermore, the Defendants quote the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in support of the proposition that this Court should adopt the totality-of-the-circumstances test. The Defendants state that "[t]he same arguments found to be persuasive to the Supreme Court in *Gates* apply to this case." See Defendant Couch's Motion to Dismiss, Doc. 11, at 4. The Defendants then quoted the following passage from *Gates*:

> Moreover, the 'two pronged test' directs analysis in two largely independent channels.... There are persuasive arguments against according these two elements independent status. Instead, they are better understood in the totality-of-the-circumstances analysis....

*Id.* (quoting *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329). The two prong test referred to in *Gates*, quoted by the Defendants, was a test derived from two United States Supreme Court cases, *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The *Aguilar–Spinelli* test was used in determining whether an informant's tip established probable cause for the issuance of a warrant; its purpose was wholly unrelated to those of the two-pronged pre-indictment delay test at issue here.

In *Gates* the Supreme Court abandoned the rigid *Aguilar–Spinelli* test in favor of the totality-of-the-circumstances test, holding that the "totality-of-the-circumstances approach is far more consistent with our prior

---

1. Conspicuously, contrary to the Defendants' assertion, in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), cited by the Defendants, the Supreme Court specifically *endorsed* and *applied* a two part test and not the totality-of-the-circumstances test in determining ineffective assistance of counsel under the Sixth Amendment. The *Strickland* Court held that an ineffective assistance of counsel claim has two prongs:

> [f]irst, the defendant must show that counsel's assistance was deficient.... *Second* the defendant must show that the deficient performance prejudiced the defense.

*Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064 (emphasis added). *See also Darden v. Wainwright*, 477 U.S. 168, 184, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986) (stating that in evaluating a claim of ineffective assistance of counsel, the "claim must be evaluated against the two-part test announced in *Strickland v. Washington* ..."). Thus, *Strickland* certainly does not support the Defendants' argument that we adopt the totality-of-the-circumstances test in this case, and in fact weighs against it.

treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip." *Gates*, 462 U.S. at 230–31, 103 S.Ct. at 2328 (footnote omitted). Thus, within the specific framework of probable cause determinations based on an informant's tip, the Supreme Court discarded the unduly mechanical *Aguilar–Spinelli* test in favor of the totality-of-the-circumstances test traditionally used in other probable cause determinations. *Id.* at 233, 103 S.Ct. at 2329–30.

Consequently, the *Aguilar–Spinelli* probable cause test and the pre-indictment delay test at issue here have nothing more in common than the fact that they both have two prongs. Hence, the Supreme Court's reasons for abandoning the *Aguilar–Spinelli* test and adopting the totality-of-the-circumstances test in cases involving probable cause and informants' tips, is inapplicable to the case at bar. Thus, *Gates*, like the others cases cited by the Defendants, is inapposite.

We therefore hold that the appropriate test to apply in this case is not the totality-of-the-circumstances test. Accordingly, we must follow the law of *Marion, Lovasco* and their progeny, and apply the two-pronged test in determining whether the pre-indictment delay in this case violated the Defendant's rights under the Due Process Clause of the Fifth Amendment. *See Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *Brown*, 959 F.2d 63, 66 (6th Cir.1992) (per curium); *Atisha*, 804 F.2d 920, 928 (6th Cir. 1986); *Brown*, 667 F.2d at 568 (6th Cir. 1982).[2]

**b) The Applicable Two–Pronged Test**

■ Although the statute of limitations provides the primary protection "against ov-erly stale criminal charges," *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977) (citations omitted); *United States v. Atisha*, 804 F.2d 920, 928 (6th Cir.1986), the Due Process Clause also plays a limited role in preventing "oppressive" pre-indictment delay. *Lovasco*, 431 U.S. at 789, 97 S.Ct. at 2048; *United States v. Brown*, 959 F.2d 63, 65 (6th Cir. 1992) (per curium); *Atisha*, 804 F.2d at 928. In determining whether pre-indictment delay violates a criminal defendant's due process rights, the Court must apply a two-part test. *Brown*, 959 F.2d 63, 66 (6th Cir.1992); *United States v. Brown*, 667 F.2d 566, 568 (6th Cir.1982); *see Lovasco*, 431 U.S. at 789–90, 97 S.Ct. at 2048–49; *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465. The dismissal for pre-indictment delay is warranted only when the defendant shows *both* substantial prejudice to his right to a fair trial *and* that the delay was an *intentional* device by the government to gain a tactical advantage. *Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *Brown*, 959 F.2d at 66; *United States v. Lash*, 937 F.2d 1077, 1088 (6th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 397, 116 L.Ed.2d 347 (1991); *Atisha*, 804 F.2d at 928; *Brown*, 667 F.2d at 568; *see Lovasco*, 431 U.S. at 789–90, 97 S.Ct. at 2048–49.

■ As in any case of delay, actual prejudice may in fact have occurred in the case at bar. This, however, is not enough to establish the first prong of the test. *Lovasco*, 431 U.S. at 789–90, 97 S.Ct. at 2048–49; *Marion*, 404 U.S. at 324–25, 92 S.Ct. at 465–66; *Brown*, 959 F.2d 63, 66 (6th Cir.1992); *Atisha*, 804 F.2d at 928. Rather, the prejudice must be substantial and not merely speculative. *Lovasco*, 431 U.S. at 789, 97 S.Ct. at

**2.** The Court notes that the two-pronged *Marion–Lovasco* test has been almost universally adopted by the circuits in pre-indictment delay cases. *See, e.g., United States v. Henson*, 945 F.2d 430, 439 (1st Cir.1991); *United States v. Ashford*, 924 F.2d 1416, 1419–20 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 98, 116 L.Ed.2d 69 (1991); *United States v. LeQuire*, 943 F.2d 1554, 1560 (11th Cir.1991); *United States v. Delario*, 912 F.2d 766, 769 (5th Cir.1990); *United States v. Meyer*, 906 F.2d 1247, 1251 (8th Cir.1990); *Unit-*ed States v. Sherlock, 865 F.2d 1069, 1074 (9th Cir.1990); *United States v. Comosona*, 848 F.2d 1110, 1113 (10th Cir.1988); *United States v. Hoo*, 825 F.2d 667, 671 (2d Cir.1987), *cert. denied*, 484 U.S. 1035, 108 S.Ct. 742, 98 L.Ed.2d 777 (1988); *United States v. Jones*, 785 F.Supp. 1181, 1185 (E.D.Pa.), *aff'd*, 980 F.2d 725 (3d Cir.1992); *United States v. Naserkhaki*, 713 F.Supp. 190, 192 (E.D.Va.1989). Similarly, we are not aware of any court that has adopted the totality-of-the-circumstances test in this type of case.

2048.[3] We find that the Defendants have failed to establish substantial prejudice.

■ In this case, the Defendants claim that a material witness has suffered a stroke and may no longer be able to relate his account of the incident. The Defendants also claim that the tape of the radio broadcast made during the course of the chase has been destroyed. The Defendants have proffered no evidence that the witness who has a suffered a stroke would have provided exculpatory testimony. There is, in fact, to the contrary, evidence that the witness was too far away from the arrest to be of any value to either side in this case. Similarly, the Defendants have offered nothing to persuade the Court that any radio broadcast tapes made during the chase would have provided any relevant, much less exculpatory, evidence. Thus, the Defendants' assertion of prejudice is speculative at best. *See Lovasco*, 431 U.S. at 789, 97 S.Ct. at 2048 (defendant, claiming that two material witnesses had died during pre-indictment delay, failed to "state how the witnesses would have aided the defense had they been willing to testify"); *United States v. Nichols*, 937 F.2d 1257, 1261 (7th Cir.1991) ("a defendant must do more than allege a particular witness is no longer available and that the witnesses testimony would have helped the defense").

■ Furthermore, had the Defendants fulfilled the first prong of the test, they would have still had to show that the delay was an intentional device by the government to gain a tactical advantage. *Marion*, 404 U.S. at 324–25, 92 S.Ct. at 465–66; *Brown*, 959 F.2d at 66; *Lash*, 937 F.2d at 1088; *Atisha*, 804 F.2d at 928. The Sixth Circuit elaborated on this point in *United States v. Brown* stating that, "[a] defendant's Fifth Amendment due process rights are generally not implicated where the government offers a valid reason for the delay." 959 F.2d at 66; *see Lovasco*, 431 U.S. at 789–90, 97 S.Ct. at 2048–49. More pertinent to this case, however, is the fact that a delay resulting from the govern-

ment's investigative efforts does not deprive the defendant of due process, even if the defense may have been prejudiced by the delay. *Lovasco*, 431 U.S. at 796, 97 S.Ct. at 2051–52; *Atisha*, 804 F.2d at 928.

■ Although the Defendant Kraft has claimed that the delay was a tactic on the part of the Government to take advantage of the publicity of the Rodney King case, as well as to profit from a material witness' stroke, he has offered nothing in support of these assertions. On the other hand, the Government has proffered legitimate reasons for the delay. For example, the Government claims that the federal government did not learn of the incident until April 1991—almost two years after the incident—and the information was not forwarded to the United States Department of Justice Civil Rights Division until July 1991. After that the Government began an investigation, which included the obtaining of a cooperation agreement with one of the officers involved in the incident, and culminated in the indictment in March 1993. Thus, only 23 months elapsed from when the federal government first discovered and investigated the matter to the indictment.

Therefore, not only has the Government offered legitimate reasons for the delay, mostly related to the investigative process, but the defendant has offered nothing in the way of evidence to demonstrate that the delay was part of some purposeful scheme to gain a tactical advantage. We therefore find that the Defendants have failed to establish that the pre-indictment delay violated their right to due process. Thus, it would be inappropriate to dismiss Count I of the indictment. *See Lovasco*, 431 U.S. at 789–90, 796, 97 S.Ct. at 2048–49, 2051–52; *Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465; *Brown*, 959 F.2d at 66; *Lash*, 937 F.2d at 1088; *Atisha*, 804 F.2d at 928; *Brown*, 667 F.2d at 568.

---

**3.** The Supreme Court observed in the *Marion* and *Lovasco* cases, "[a]ctual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution" *Lovasco*, 431 U.S. at 789–90, 97 S.Ct. at 2048–49 (quoting *Marion*, 404 U.S. at 324–25, 92 S.Ct. at 465–66).

### Count II

The Defendant Couch has also moved to dismiss Count II of the indictment claiming that he did not arrest Overbey, and that at any rate, probable cause for the arrest has been conclusively established due to the state court proceedings, including Overbey's plea and conviction. At the hearing, the Defendants' further asserted that Mr. Overbey's failure to object to the state proceedings or pursue a constitutional claim should likewise preclude this action. We disagree.

First, "[i]n federal actions ... a state court judgment will not be given preclusive effect ... where 'the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.'" *Haring v. Prosise,* 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983) (citing *Allen v. McCurry,* 449 U.S. 90, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980)) (footnote omitted). Because the United States was not a party to the state proceedings and did not have a full and fair opportunity to litigate the issue of probable cause, the state court's findings and Mr. Overbey's conviction, have no preclusive effect on this action. *Haring v. Prosise,* 462 U.S. 306, 313, 103 S.Ct. 2368, 2373; *See Standefer v. United States,* 447 U.S. 10, 21–23, 100 S.Ct. 1999, 2006–08, 64 L.Ed.2d 689 (1980). Additionally, because this is a criminal action brought on behalf of the citizens of the United States and not Mr. Overbey, Mr. Overbey's decision to not pursue a civil rights claim or otherwise challenge his arrest, is even less relevant. Finally, "even when issues have been raised, argued and decided in a prior proceeding, and are therefore preclusive under state law, redetermination of the same issues may nevertheless be warranted if there is reason to doubt the quality, extensiveness or fairness ..." of the state proceeding. *Prosise,* 462 U.S. at 318, 103 S.Ct. at 2375–76 (internal quotations and citations omitted).

We therefore hold, that the state court proceedings and findings, and Mr. Overbey's actions, do not warrant dismissal of the indictment against the Defendant Couch in this case. Similarly, with respect to whether the evidence establishes that Defendant Couch arrested Overbey, the grand jury found that probable cause existed to indict the Defendant Couch. Thus, although the Court will consider a Rule 29 motion at the appropriate time, we find it inappropriate to grant the Defendant's motion to dismiss Count II of the indictment on these grounds as well. *See United States v. Short,* 671 F.2d 178, 183 (6th Cir.), *cert. denied,* 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982).

### CONCLUSION

Accordingly, for the foregoing reasons, we hereby DENY the Defendant Kraft's Motion to Dismiss the Indictment as to Count I, and DENY the Defendant Couch's Motion to Dismiss the Indictment as to Counts I and II.

SO ORDERED.