**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 93-8290
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

STERLING TYRONE ADAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
(A-92-CR-223-01-SS)
_____

(September 22, 1995)

Before DAVIS, BARKSDALE and DeMOSS, Circuit Judges

PER CURIAM:[1]

Adams challenges his conviction and sentence in a drug trafficking and a related weapons offense.  We affirm.

I.

Sterling Tyrone Adams was convicted by a jury of possession with intent to distribute cocaine base (crack) and using or carrying a firearm during a drug-trafficking crime and was sentenced to 220 months' imprisonment and five years' supervised release.

---

[1]  Local Rule 47.5 provides:  "The publication  of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."  Pursuant to that Rule, the court has determined that this opinion should not be published.

On the night of November 12, 1992, narcotics officers executed a search warrant at the residence of Anthony Harper. Officers discovered a quantity of crack cocaine and Harper began to disclose information about his drug-trafficking activities and the activities of others involved in the Austin, Texas, area.

While Harper was talking to the officers, he was paged by an individual identified as Sterling. Harper told the officers that Sterling was his supplier and that Sterling needed to sell 11 ounces of crack cocaine before going to Las Vegas. Over the next two hours, Harper received several telephone calls from Sterling and eventually arranged for the purchase of the 11 ounces of crack. Harper agreed to meet Sterling in front of a grocery store in Austin at 2:00 a.m. on November 13. In the last telephone conversation, Sterling indicated that he was on his way to the store with the crack cocaine.

Harper described Sterling as a very large black man, over six feet tall and weighing more than 200 pounds. Harper stated that Sterling would be driving a light-colored van, and that it was possible that he would be armed.

When the narcotics officers arrived at the grocery store, they observed only one individual and one vehicle in the parking lot. The individual and vehicle matched the description given by Harper. The officers immediately detained the individual, who identified himself as "Sterling Adams."

Almost simultaneously, one of the officers searched the van for anyone who could have been concealed in it. As the officer

2

exited the van he noticed a fast food bag on the floor between the seats with the top rolled down containing what appeared to be crack cocaine. He also saw a handgun sticking out from beneath the driver's seat. Adams was placed under arrest and later gave consent to search his residence. A search of his residence revealed one ounce of crack cocaine, beakers associated with the manufacture of crack cocaine, a digital scale, two gun cases, $4700 cash, and two kinds of bullets.

## II.

### A.

Adams argues first that his Fourth Amendment rights were violated when the officers arrested and searched him and his van without a warrant. In the district court, Adams filed a motion to suppress the evidence obtained after his arrest and the search of his van. The district court held that probable cause existed to believe Adams would have crack cocaine on his person or in his vehicle based on the reliability of the informant's tip as corroborated by the officers and denied the motion to suppress.

In reviewing a district court's ruling on a motion to suppress, this court reviews the district court's factual findings under the clearly erroneous standard, and the district court's conclusions of law de novo. United States v. Tellez, 11 F.3d 530, 532 (5th Cir. 1993), cert. denied, 114 S. Ct. 1630 (1994). Under this standard, the district court's ruling denying the motion to suppress should be upheld "if there is any reasonable view of the evidence to support it." Id. (internal quotations and citation

3

omitted).

The officers required probable cause to arrest Adams without a warrant. United States v. Raborn, 872 F.2d 589, 593 (5th Cir. 1989). Probable cause exists when the facts available at the time of arrest warrant a person of reasonable caution to believe that an offense has been or is being committed and that the individual arrested is the offender. Id. This is an objective standard which takes into account the expertise and experience of the police officer. Id.

Adams argues that the officers did not have probable cause to arrest him because Harper was a first time informant not known by the officers as being reliable. He also argues that the information given by the informant was not sufficiently detailed or particularized as to warrant the belief that he was the black male in question.

Prior performance by an informant is not the only indicia of reliability. A tip made in great detail, evincing a strong basis for the informant's knowledge, strengthens reliability. United States v. Delario, 912 F.2d 766, 768 (5th Cir. 1990). An informant's prediction of future behavior, corroborated by police observation, can establish probable cause. United States v. Roch, 5 F.3d 894, 898-99 (5th Cir. 1993).

The officers knew the basis of the informant's knowledge. Agent Williamson was present when Harper received telephone calls from Adams setting up the drug transaction and overheard the conversations. Harper described the person on the other end of the

4

telephone as a very large black man, over six feet tall and over 200 pounds, named Sterling, driving a light-colored van, who was going to be at a particular grocery store at 2:00 a.m. to sell 11 ounces of crack cocaine. The officers proceeded to the store when Sterling called to say he was on his way there. When they arrived, they observed a very large black man using the telephone in the parking lot of the store. The only vehicle in the store parking lot was a light colored van as the informant had predicted. The officers arrested the man and searched the van for possible accomplices.

Based on the corroboration of the informant's tip by police observation, we agree with the district court that the facts were sufficient to establish probable cause that Adams was the person with whom the informant had arranged a drug buy, thus warranting his arrest.

Adams argues that even if his arrest was legal, the warrantless search of his van was not constitutionally authorized. A warrantless search of a vehicle is permissible if the police have probable cause to believe that the vehicle contains contraband. Delario, 912 F.2d at 768. The determination of whether probable cause exists involves a practical, common-sense decision whether there is a fair probability that contraband will be found in the place to be searched. Id.

After the officers arrested Adams, patted him down, and failed to find any drugs or weapons on him, one of the officers immediately went to the van to determine if there was anyone else

5

in the van.  In the course of checking the van for possible accomplices, the officer discovered the cocaine and weapon.

For the same reasons that probable cause existed to arrest Adams, probable cause existed to search his van.  The officers, in reliance on the information given by the informant, as corroborated by them, had probable cause to believe that Adams' van contained crack cocaine once they ascertained that it was not on his person.

B.

Adams argues next that the evidence was insufficient to sustain his conviction under 18 U.S.C. § 924(c) because the evidence did not establish that the firearm found in his van was connected to the drug-trafficking offense.  He contends that evidence at trial established a coincidental and inadvertent presence of the gun in his van, and that he was carrying the gun with him on a family trip to Houston.  He argues that the Government failed to show any more than mere proximity between the gun and the drugs found in the van.

Adams did not move for a judgment of acquittal so this court restricts its review of his claim of insufficient evidence to whether the conviction resulted in a manifest miscarriage of justice, which would exist only if the record was devoid of evidence pointing to guilt, or if the evidence on a key element of the offense was so tenuous that a conviction would be shocking. United States v. Thomas, 12 F.3d 1350, 1358 (5th Cir.), cert. denied, 114 S. Ct. 1861, 2119 (1994).

To sustain a conviction under 18 U.S.C. § 924(c), the

6

Government must prove: 1) that the defendant committed a drug-trafficking crime; and 2) that he knowingly used or carried a weapon; 3) during and in relation to the drug-trafficking crime. United States v. Willis, 6 F.3d 257, 264 (5th Cir. 1993).

Adams does not challenge the sufficiency of the evidence relating to his drug-trafficking activities but he asserts that he did not use or carry the gun in relation to the drug-trafficking crime as required by the statute.  To demonstrate use in relation to the drug-trafficking crime, the Government must show only that the firearm was available to provide protection to the defendant in connection with his drug-trafficking, or that the weapon could have been used to protect the operation and that the presence of the weapon was connected with the drug-trafficking.  United States v. Foy, 28 F.2d 464, 475 (5th Cir.), cert. denied, 115 S. Ct. 610 (1994).

Adams' operation of the van with knowledge that the gun was in the van establishes the carrying requirement.  United States v. Speer, 30 F.3d 605, 612 (5th Cir.), cert. denied, 115 S. Ct. 768 (1994).  The gun was located on the floor of the van under the driver's seat, next to the bag of cocaine.  Proof of the presence of the weapon under the driver's seat where Adams had just been sitting while driving to the location of the planned drug transaction is sufficient to meet the Government's burden to show that the firearm was available to provide protection to Adams in connection with his drug-trafficking activities. See United States v. Featherson, 949 F.2d 770, 776-77 (5th Cir. 1991) (pistol under

7

driver's seat; evidence of connection sufficient), cert. denied, 503 U.S. 995 (1992). The record is certainly not devoid of evidence of any connection between the gun and the drug-trafficking.

C.

Adams argues finally that the provisions of the sentencing guidelines requiring higher sentences for cocaine base as compared to cocaine powder violate substantive due process and the Eighth Amendment. He acknowledges that this court has previously rejected these arguments, but he contends that new factors warrant reconsideration en banc. He notes that the Sentencing Commission has recently submitted a report to Congress containing findings that the current guidelines are not supported.

Adams did not raise this issue in the district court and we decline to address it here. This court has consistently rejected arguments that the disparate sentencing provisions for crack cocaine and cocaine powder violate due process or equal protection. United States v. Thomas, 932 F.2d 1085, 1090 (5th Cir. 1991), cert. denied, 502 U.S. 1038 (1992); United States v. Galloway, 951 F.2d 64, 66 (5th Cir. 1992); United States v. Watson, 953 F.2d 895, 898 (5th Cir.), cert. denied, 504 U.S. 928 (1992). We are not inclined to speculate on whether or how Congress will change current law.

III.

For the reasons stated above, Adams' conviction and sentence are affirmed.

AFFIRMED.

8