Brown-JJ v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-109-CR
&
No. 10-95-110-CR

     JAMES JEROME BROWN,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 363rd District Court
Dallas County, Texas
Trial Court Nos. F95-00291-W & F95-00290-W
                                                                                                    

O P I N I O N
                                                                                                    

      In Cause No. 10-95-109-CR Appellant Brown appeals his conviction for murder, enhanced
by a prior felony conviction, for which he was sentenced to life in the Texas Department of
Criminal Justice, Institutional Division, and a $10,000 fine.
      In Cause No. 10-95-110-CR Appellant Brown appeals his conviction for aggravated assault,
enhanced by a prior felony conviction, for which he was sentenced to 35 years in the Texas
Department of Criminal Justice, Institutional Division, and a $10,000 fine.
      These two cases were tried together; there is one statement of facts; and the briefs are
identical.
      Appellant was indicted for the murder of Clemencia Mederos and the aggravated assault of
Alejandro Mederos, the date of the alleged offenses being December 3, 1994. The jury found
Appellant guilty of both offenses; found that a deadly weapon was used in both offenses; and
found the enhancement paragraph of both indictments "true." The jury set punishment at life in
prison and a $10,000 fine in the murder case, and at 35 years and a $10,000 fine in the aggravated
assault case.
      About 11:30 p.m. on December 3, 1994, Alejandro Mederos, his sister, Clemencia Mederos,
and Francisco Sanchez left their apartment to use a pay phone in the apartment complex. When
they reached the phone, Clemencia started to place a call when Francisco saw a black man
approaching them and told Clemencia to hang up the phone, and the trio turned to leave and began
running toward the apartment. They had taken about three steps when Appellant started shooting
at them. Clemencia was shot and killed, Alejandro was shot and injured. Neither of the trio said
anything to Appellant or possessed any weapon. Appellant had a Tech-9 gun and he was
identified, arrested, indicted, and convicted of Clemencia's murder and of the aggravated assault
on Alejandro. At the punishment phase, the jury assessed life and a fine for the murder, and 35
years and a fine for the aggravated assault.
      Appellant appeals in each case by one point: "The trial court erred in failing to charge the
jury (at the punishment phase) regarding parole as mandated by the Texas Code of Criminal
Procedure, Article 37.07, § 4(a)."
      Article 37.07, § 4(a) requires the court to give written instructions on parole laws in felony
cases where the jury is to assess punishment and the defendant was convicted of a 3(g) offense or
there is a deadly weapon finding. The required instructions are as follows: 
Under the law applicable in this case, the defendant if sentenced to a term of
imprisonment, may earn time off the period of incarceration imposed through the award
of good conduct time. Prison authorities may award good conduct time to a prisoner who
exhibits good behavior, diligence in carrying out prison work assignments, and attempts
at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take
away all or part of any good conduct time earned by the prisoner.
 
It is also possible that the length of time for which the defendant will be imprisoned might
be reduced by the award of parole.
 
Under the law applicable in this case, if the defendant is sentenced to a term of
imprisonment, he will not become eligible for parole until the actual time served equals
one-half of the sentence imposed or 30 years, which ever is less, without consideration
of any good conduct time he may earn. If the defendant is sentenced to a term of less
than four years, he must serve at least two years before he is eligible for parole. 
Eligibility for parole does not guarantee that parole will be granted.
 
It cannot be accurately predicted how the parole law and good conduct time might be
applied to this defendant if he is sentenced to a term of imprisonment, because the
application of these laws will depend on decisions made by prison and parole authorities.
 
You may consider the existence of parole law and good conduct time. However you are
not to consider the extent to which good conduct time may be awarded to or forfeited by
this particular defendant. You are not to consider the manner in which the parole law
may be applied to this particular defendant.

      The above instructions were originally in the charge and were removed after Appellant
objected to the inclusion of the instructions. The court sought clarification of exactly what the
defense was asking the court to do, and defense counsel then stated he did not want the instructions
on parole in the charge because he feared that the instructions would result in a higher sentence
for Appellant. The court then deleted the parole law instructions "at defendant's request," and
submitted the charge to the jury without the instructions.
      Under the invited error doctrine, an appellant may not allege error on appeal which was the
result of appellant's own actions. Regarding instructions in a jury charge, our Court of Criminal
Appeals has explained that "it is a long standing rule that a defendant may not request a charge and
when that charge is given as requested, complain on appeal of any error." Livingston v. State, 739
S.W.2d 311, 341 (Tex. Crim. App. 1987), cert. denied, 487 U.S. 1210 (1988). This rule applies
"even if the charge is later found to be erroneous." Tucker v. State, 771 S.W.2d 523, 534 (Tex.
Crim. App. 1988), cert. denied, 492 U.S. 912 (1989).
      Appellant's point is overruled in both cases. The judgments in both case are affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed February 21, 1996
Do not publish



single Barker
factor is a necessary or sufficient condition to the finding of a speedy trial violation. Barker,
supra, p. 533. We must independently weigh and balance the four Barker factors. Munoz, supra,
p. 821.
Length of the Delay
      The length of the delay is a “triggering mechanism” for analysis of the other Barker factors. 
Munoz, supra, p. 821.
      In this case, the delay was 31 months between the indictment and the Appellant’s trial. This
delay is sufficient to trigger review of the remaining Barker factors. Munoz, supra, p. 822. This
factor weighs against the State.
Reason for the Delay
      In determining whether a speedy trial violation occurred, a deliberate attempt to delay the trial
should be weighed heavily against the State; a more neutral reason such as negligence or a
crowded court docket should be weighed against the State less heavily; and a valid reason should
not be weighed against the State at all. Delay which is attributable in whole or in part to the
defendant may contribute to a waiver of the right to a speedy trial claim. Munoz, supra, p. 822. 
And an agreed reset waives the right to a speedy trial claim for the period of time involved. State
v. Kori, 846 S.W.2d 459, 464 (Tex. App.—Houston [14th Dist.] 1993, writ ref’d.).
      Appellant was indicted January 30, 1997. His trial commenced August 31, 1999. This is a
total of 31 months delay, (approximately 930 days). During this time, Appellant agreed to five
resets for a total of 506 days of the delay. This period of time was waived. Thus, we have 424
days (approximately 14 months) trial delay not attributable to or waived by Appellant.
      The record reflects that the State offered a plea bargain to Appellant for five years deferred
adjudication community supervision in exchange for a plea of guilty, but that Appellant rejected
same. The record further reflects that Appellant spent approximately 19 months of the 31 months
between indictment and trial, in jail.
      The 14 months in trial delay not agreed to by Appellant weighs against the State.
Appellant’s Assertion of His Right to a Speedy Trial
      The third factor we must consider is whether Appellant asserted his right to a speedy trial. 
A defendant must assert this right. Barker, supra, p. 528. It was not until May 3, 1999, that
appellant filed a pro se motion not asking for a speedy trial, but for a dismissal of his case. A
motion for a dismissal should not be considered a request for a speedy trial. Kuri, supra, p. 465. 
Moreover, Appellant was represented by counsel when he filed his pro se request to dismiss the
proceedings. In such case, the trial court was not required to consider his pro se motion. Floyd
v. State, 959 S.W.2d 706, 710 (Tex. App.—Ft. Worth, no pet.). Appellant’s attorney asserts his
right in a motion filed the day after the case was called for trial. The right to a speedy trial was
not properly asserted before the commencement of trial.
      Appellant’s failure to timely assert his right to a speedy trial weighs against Appellant.
Prejudice to the Appellant
      Appellant must make a prima facie showing of prejudice. Munoz, supra, p. 826. In
determining whether Appellant suffered prejudice, we look to whether the interests for which the
speedy trial was designed, were affected. Barker, supra, p. 532. These interests are: 1)
preventions of oppressive incarceration; 2) minimization of the accused’s anxiety and concern; and
3) limitation of the possibility that the accused’s defense will be impaired. Munoz, supra, p. 826.
      Appellant spent 19 months of the 31 months of trial delay in jail. At a trial setting, the State
was not ready and the trial judge materially lowered Appellant’s bail and released him from jail. 
Given that the State offered Appellant deferred adjudication community supervision in exchange
for a plea of guilty, Appellant’s anxiety and concern at 19 months incarceration and no trial or
resolution in his case, must have caused Appellant great anxiety and concern. Moreover, a
number of witnesses at trial could not remember critical facts concerning the case. For example,
the offense allegedly occurred in 1995. Crystal’s mother said the offense occurred in the same
year she reported it to the police which was December 7, 1996. And Appellant, although denying
the offense, could not remember where he was on August 31, 1995. Due to the lapse of time, it
was very difficult for witnesses to remember events that occurred four years earlier. This factor
weighs against the State. Our balancing of the Barker factors convinces us that the denial of a
speedy trial contributed to both Appellant’s conviction and punishment.
      Issue 2 is sustained.
      Sustaining of Issue 2 requires a reversal of the judgment and a dismissal of the indictment and
renders unnecessary consideration of Issue 3.
      Reversed and indictment dismissed.


                                                                         FRANK G. McDONALD
                                                                         Chief Justice (Retired)

Before Justice Vance,
      Justice Gray, and
      Chief Justice McDonald (Retired)
      (Justice Gray dissenting)
Reversed and indictment dismissed
Opinion delivered and filed January 17, 2001
Do not publish